UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

JEREMIAH NOLAN, JR. and )
SANDRA NOLAN, Individually and as )
Husband and Wife, )
                             )
      Plaintiffs, )
                             )       Case No. 1:19-cv-01245
        v. )
                             )
COUNTY OF ERIE, )
ERIE COUNTY SHERIFF'S DEPARTMENT, )
TIMOTHY B. HOWARD, )
MARK N. WIPPERMAN, )
THOMAS DIINA, and )
JEFFREY HARTMAN, )
                             )
      Defendants. )

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
### (Doc. 4)

Plaintiffs Jeremiah Nolan, Jr. ("Plaintiff J. Nolan") and Sandra Nolan ("Plaintiff S. Nolan" and collectively, "Plaintiffs") bring this action against Defendants County of Erie (the "County"), Erie County Sheriff's Department (the "Sheriff's Department"), Sheriff of Erie County Timothy B. Howard, Undersheriff of Erie County Mark N. Wipperman, and Sheriff of Erie County employees Thomas Diina and Jeffrey Hartman (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 and New York common law, alleging that Plaintiff J. Nolan was wrongfully terminated from his employment at the Sheriff's Department following a negligent investigation into an alleged incident of theft.

On September 20, 2019, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs failed to comply with Defendants' demand for examination submitted pursuant to N.Y. Gen. Mun. L. § 50-h, that other claims are time-barred, and that they fail to plausibly allege claims for relief. (Doc. 4.) Plaintiffs oppose

the motion. Defendants filed a reply on October 17, 2019, at which time the court took the pending motion under advisement.

Plaintiffs are represented by Steven M. Cohen, Esq., and William A. Lorenz, Jr., Esq. Defendants are represented by Erin Elizabeth Molisani, Esq., and Kenneth R. Kirby, Esq.

## I.    Allegations in the Complaint.

Plaintiffs are husband and wife who are residents of the County of Erie in New York. Plaintiff J. Nolan works for the Sheriff's Department as a "career law enforcement officer[.]" (Doc. 1 at ¶ 13, 40.) Plaintiffs assert that Sheriff Howard, Undersheriff Wipperman, and Defendants Diina and Hartman[1] reside in the County and were, at all relevant times, employees of the Sheriff's Department. Plaintiffs allege that these individual Defendants engaged in all acts alleged in the Complaint in the course of their employment and under the color of New York law in their official and individual capacities. Alternatively, Plaintiffs allege that these individual Defendants acted maliciously and intentionally outside the scope of their employment.

On approximately May 27, 2018, Plaintiff J. Nolan was working in a Sheriff's Department facility at the Erie County Medical Center ("ECMC") and found a magazine pouch in a desk drawer on the ninth floor. Based on written directives "detailed in said ECMC [o]ffice," he "moved the magazine pouch to the top of a gun box" in the ECMC office. *Id.* at 12, ¶ 27. His union representative informed him approximately six days later that he was accused of stealing an ammunition magazine from the ECMC office.

On June 8, 2018, Plaintiff J. Nolan met with Defendant Hartman, who gave Plaintiff the option to either resign from the employment of the Sheriff's Department or charges would be filed against him and he would be arrested that day. Plaintiff J. Nolan attempted to explain "the circumstances surrounding the accusation, explained it was a magazine pouch without a magazine, where he put it and why, and Defendants refused to listen." *Id.* at 12, ¶ 31. On June 8, 2018, Plaintiff received a letter from the Sheriff's

---

[1] Plaintiffs do not allege in what capacity Defendants Diina and Hartman were employed by the Sheriff's Department.

Department, signed by Defendants Diina and Hartman, placing him on administrative leave without pay and ordering him to home confinement from June 8, 2018 through June 14, 2018. He asserts that the order of home confinement "was improper, unlawful[,] and without legal justification[,]" *id.* at 13, ¶ 33, and that his attempts "to explain the facts of the situation[] and the errors and legal insufficiencies of and committed by Defendants were futile." *Id.* at 13, ¶ 35.

On or about June 22, 2018, Plaintiff J. Nolan's employment was terminated by Undersheriff Wipperman, Defendants Diina and Howard, the County, and the Sheriff's Department "as a result of an intentionally deficient and improper and negligent investigation[.]" *Id.* at 13, ¶ 36. He subsequently had night terrors and "feelings of paranoia, duress, chest pains, trouble breathing, severe sweating, and disorientation upon waking up." (Doc. 1 at 13, ¶ 37.)

On or about June 26, 2018, Plaintiff J. Nolan was arrested for Petit Larceny, a Class-A misdemeanor, which he contends, "if sustained, would forever be an impediment to future employment as a police officer." *Id.* at 13, ¶ 40. That same day, Sheriff Howard published or released the following allegedly defamatory statements to various press and media outlets regarding Plaintiff J. Nolan: "I cannot understand how a sworn officer could take another officer's lifeline—the magazines for his duty gun. It was evident that his misconduct warranted his termination." *Id.* at 14, ¶ 41. This statement was then published in a news article titled: "What one Erie County Sheriff's deputy did that got him arrested and fired[.]" *Id.* at 16, ¶ 62. Plaintiff J. Nolan asserts that Sheriff Howard's statement accusing Plaintiff J. Nolan of committing a crime "and/or conduct involving moral turpitude" was false when made, was made with malice, and that Sheriff Howard "knew or should have known the statements were false or should have had serious doubts about their truth, and published the statements anyway, with a reckless disregard of [their] probable falsity." *Id.* at 16-17, ¶¶ 64-67.

Following a bench trial on December 17, 2018, Plaintiff J. Nolan was acquitted of misdemeanor Petit Larceny. He was informed on December 22, 2018 that he would be reinstated as an employee of the Sheriff's Department, and his union representative

advised he was entitled to full payment of back wages. Plaintiff J. Nolan returned to work on March 26, 2019 but has not yet received any back pay.

Upon returning to work, Plaintiff J. Nolan experienced "hostility and retaliation" from "agents and/or employees of all Defendants[,]" which, in conjunction with the negative publicity of his arrest, caused "great stress" to him and his wife. *Id.* at 14, ¶¶ 46-47. Plaintiff J. Nolan alleges he has "a history of asserting his rights and filing grievances through proper channels against . . . Defendants" and of "seeking legal redress against Defendants for conduct [he] deemed illegal or wrong[,]" which Defendants have purportedly resented. (Doc. 1 at 14, ¶¶ 48-49.) As acts of retaliation, Plaintiff J. Nolan alleges that on February 13, 2019, his sick leave was "abruptly stopped without just cause" even though he submitted the required paperwork. *Id.* at 17, ¶ 71. On or about March 25, 2019, Defendants' "agent" Lieutenant Adamek allegedly told Plaintiff J. Nolan: "Looks like you burnt too many bridges around here[.]" *Id.* at 17, ¶ 72. Lieutenant Adamek subsequently forced Plaintiff J. Nolan to work an additional eight-hour shift contrary to overtime restrictions he had from the Family Medical Leave Act ("FMLA"), and unjustly sanctioned Plaintiff J. Nolan for "leaving his post under circumstances which didn't warrant that sanction[.]" *Id.* at 17, ¶ 73. Plaintiff J. Nolan alleges other employees were not sanctioned for this same conduct.

Plaintiff J. Nolan further alleges that, on or about March 28, 2019, Deputy Marc Scarpace told Plaintiff J. Nolan to "fuck yourself" in front of others "at the behest and instance of Defendants" and that when he reported the incident, Defendants refused to "process or act on" it. *Id.* at 18, ¶¶ 75-77. On or about April 5, 2019, Plaintiff J. Nolan was ordered to return his hard copy Policy and Procedures binder when others were not instructed to do so. On or about April 23, 2019, he was "written up for exhaustion of his FMLA time despite having eight hours remaining." *Id.* at 18, ¶ 79. Chief Union Steward Deputy Mark Geary allegedly called this series of events a "witchhunt." (Doc. 1 at 18, ¶ 80.)

Plaintiffs asserts eight causes of action: (1) wrongful termination by all Defendants "as a result of an improper and negligent investigation" (Count I), *id.* at 15, ¶

4

51; (2) "administrative negligence" by all Defendants individually and through their agents, servants, and/or employees, for "fail[ure] to use due care to conduct a proper investigation, which led to a negligent investigation and false charges being brought against Plaintiff [J.] Nolan[]" (Count II), *id.* at 15, ¶ 56; (3) defamation *per se* by Sheriff Howard (Count III)[2]; (4) harassment from agents of all Defendants (Count IV); (5) violation of Plaintiff J. Nolan's "civil rights under the Fourteenth Amendment of the United States Constitution to be secure against deprivations of liberty without due process of law" and under New York law by all Defendants except for Sheriff Howard (Count V), *id.* at 19, ¶ 85; (6) intentional infliction of emotional distress by all Defendants (Count VI); (7) negligent infliction of emotional distress by all Defendants (Count VII); and (8) loss of consortium on behalf of Plaintiff S. Nolan "[a]s a result of the negligence and deprivation of liberty by Defendants in conjunction with the wrongful termination inflicted upon Plaintiff [J.] Nolan[]" (Count VIII). *Id.* at 21, ¶ 106. Plaintiffs seek Plaintiff J. Nolan's back pay; damages for their financial, emotional, and physical injuries; special damages related to Plaintiff J. Nolan's defamation claim; costs; and attorney's fees.

Prior to filing their Complaint, Plaintiffs state Plaintiff J. Nolan, then self-represented, served upon the County and Sheriff's Department a written Notice of Claim pursuant to N.Y. Gen. Mun. L. § 50-e on September 20, 2018. Plaintiffs served an Amended Notice of Claim on April 18, 2019, which is attached to the Complaint as Exhibit A. On July 5, 2019, Defendants served on Plaintiffs a Notice of Examination pursuant to N.Y. Gen. Mun. L. § 50-h scheduling an examination of both Plaintiffs for October 1, 2019, which is attached to the Complaint as Exhibit B. Plaintiffs filed suit on September 5, 2019 in New York Supreme Court, County of Erie, prior to submitting to

---

[2] The Complaint contains a typographical error rendering it unclear against whom Plaintiff J. Nolan seeks to bring a defamation claim. *See* Doc. 1 at 17, ¶ 68 ("As a result of the Plaintiffs' false and defamatory statements, Plaintiffs have incurred losses, damages, and special damages[.]"). Because Plaintiff J. Nolan's defamation claim arises from Sheriff Howard's alleged conduct, the court construes the Complaint as alleging a defamation claim only against him.

the examination. Defendants removed the action to this court on September 16, 2019. According to Plaintiffs, Defendants have since adjourned the examination.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

In their reply, Defendants erroneously characterize their motion as one for summary judgment and urge the court to find Plaintiffs have abandoned any claim not addressed in Plaintiffs' opposition. The court declines to do so as the failure to oppose is treated differently in the context of a motion to dismiss. *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can

be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").

**B.    Whether the Sheriff's Department Is an Independent Entity Capable of Being Sued.**

Defendants argue that all claims against the Sheriff's Department must be dismissed because the Department is an administrative unit of the County and may not be sued independently.  It is well settled under New York law that the Sheriff's Department "is not a separate legal entity capable of being sued individually." *Johnson-Schmitt v. Robinson*, 990 F. Supp. 2d 331, 340 n.2 (W.D.N.Y. 2013); *see also Lin v. Cty. of Monroe*, 66 F. Supp. 3d 341, 353 n.4 (W.D.N.Y. 2014) (holding that a sheriff's department is "merely an administrative arm of the [c]ounty" and therefore "lacks the capacity to be sued") (quoting *Colpoys v. Cty. of Erie*, 2013 WL 5437635, at *3 (W.D.N.Y. Sept. 27, 2013)).  The court therefore GRANTS Defendants' motion to dismiss all claims against the Sheriff's Department.

**C.    Whether the Complaint Must Be Dismissed Because Plaintiffs Have Not Met a Condition Precedent to Suit.**

Defendants assert that the entire suit must be dismissed because Plaintiffs have not complied with Defendants' demand for examination pursuant to N.Y. Gen. Mun. L. § 50-h.  "As a general rule, state notice-of-claim statutes apply to state-law claims asserted as pendant claims in a federal action." *MacIntyre v. Moore*, 335 F. Supp. 3d 402, 411 (W.D.N.Y. 2018) (citation and internal quotation marks omitted).  Under N.Y. Gen. Mun. L. § 50-h(1), "[w]herever a notice of claim is filed against a . . . county, . . . the . . . county . . . shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made[.]"  "No demand for examination shall be effective against the claimant for any purpose unless it shall be served . . . within ninety days from the date of filing of the notice of claim[.]"  *Id.* at § 50-h(2).  Once a demand for examination has been served, "no action shall be commenced" until "the claimant has duly complied with such demand for examination[.]"  *Id.* at § 50-h(5).  "If the examination is not conducted within ninety days of service of the demand, however, a plaintiff may commence his action." *Torcivia v.*

*Suffolk Cty., N.Y.*, 2019 WL 5558062, at *16 (E.D.N.Y. Mar. 29, 2019).

"A party who has failed to comply with General Municipal Law § 50-h is generally precluded from commencing an action against a municipality[.]" *Misek-Falkoff v. Metro. Transit Auth. (MTA)*, 843 N.Y.S.2d 155, 156 (N.Y. App. Div. 2007); *Baumblatt v. Battalia*, 520 N.Y.S.2d 571, 574 (N.Y. App. Div. 1987) (dismissing a complaint against a town because "the plaintiff failed to appear for examination on his original notice of claim as requested by the town's attorney pursuant to General Municipal Law § 50-h and this failure bars the commencement of an action against the town"). In federal court, "a 'plaintiff's failure to attend a 50-h [h]earing—*no matter the reason*—is a complete bar to his state law claims[.]'" *Foy v. City of N.Y.*, 2019 WL 3717317, at *9 (E.D.N.Y. Aug. 7, 2019) (emphasis in original) (quoting *Duncan v. City of N.Y.*, 2018 WL 3421312, at *3 (E.D.N.Y. July 13, 2018)). However, a plaintiff will not be barred from pursuing state law claims in federal court prior to submitting to a § 50-h examination when there is a "dispute that the demand for examination was properly served in the first place." *Id.*

Plaintiffs contend that Defendants' demand for examination was not timely served and thus they were not required to submit to a § 50-h examination prior to commencing this action. Defendants filed a demand for examination on July 5, 2019, well over ninety days after Plaintiff J. Nolan served his original Notice of Claim on September 20, 2018. Although the original Notice of Claim does not include causes of action for negligence, harassment, or intentional and negligent infliction of emotional distress, the Notice provides the date of Plaintiff J. Nolan's termination, the date of Sheriff Howard's allegedly defamatory statement, the injuries Plaintiff J. Nolan suffered, and the assertion of Plaintiff J. Nolan's wrongful termination and defamation causes of action arising from his alleged "stealing [of] [another] officer[']s magazine for an officer[']s duty gun."

(Doc. 5-2 at 1-2.)[3]  Courts have deemed similar notices sufficient[4] because "not every claim need be set forth *in haec verba*, as long as the details pertaining to such a claim are described sufficiently with respect to time, place[,] and manner to enable the city to investigate the claims." *Gonzalez v. Bratton*, 147 F. Supp.2d 180, 193 (S.D.N.Y. 2001), *aff'd*, 48 F. App'x 363 (2d Cir. 2002) (citation and internal quotation marks omitted).

Because the September 20, 2018 Notice of Claim, as amended, provided the County with "an adequate opportunity to investigate the claim[s] in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation[,]" the County was required to serve a demand for a § 50-h examination of Plaintiff J. Nolan within ninety days. *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (citation omitted) (describing the "purpose of the notice-of-claim requirement"); *see also* N.Y. Gen. Mun. L. § 50-e(2) (stating a notice of claim must set forth "the nature of the claim[,] . . . the time when, the place where and the manner in which the claim arose[,] and . . . the items of damage or injuries"). As the County failed to do so, the demand for examination was not "effective against [Plaintiff J. Nolan] for any purpose." *Bythewood v. Hempstead Pub. Schs.*, 849 N.Y.S.2d 581, 582 (N.Y. App.

---

[3] The September 20, 2018 Notice of Claim is not attached to the Complaint. The court may nonetheless consider its contents because it is referenced in the Complaint. *See Lynch v. City of N.Y.*, 952 F.3d 67, 79 (2d Cir. 2020) ("It is well established that a pleading is deemed to include any written instrument that . . . is incorporated in it by reference[.]") (citation and internal quotation marks omitted).

[4] *See, e.g., Fincher v. Cty. of Westchester*, 979 F. Supp. 989, 1003 (S.D.N.Y. 1997) ("The fact that a cause of action not mentioned in the notice of claim arises out of the same incident as enumerated claims 'is not pivotal; rather, the nature of the claim and the theory of liability are determinative.'") (quoting *Wanczowski v. City of N.Y.*, 588 N.Y.S.2d 1011, 1011 (N.Y. App. Div. 1992)); *Brown v. City of N.Y.*, 740 N.E.2d 1078, 1080 (N.Y. 2000) (holding a notice of claim provides sufficient notice "to enable the city to investigate" if "based on the claimant's description municipal authorities can locate the place, fix the time and understand the nature of the accident[,]" even if the claim is not "stated with literal nicety or exactness") (citation and internal quotation marks omitted); *Barone v. Town of New Scotland*, 44 N.Y.S.3d 267, 268 (N.Y. App. Div. 2016) (finding a notice of claim allows defendants to investigate the underlying cause of action where "the notice specifies the date and time of the accident, as well as the nature of plaintiff's injuries, and speaks to defendant's duty" related to the claim asserted).

Div. 2007) (holding defendant was not entitled to a § 50-h examination "since the demand was not timely served" and ordering the lower court to reinstate plaintiff's complaint).[5]  Plaintiff J. Nolan thus timely filed his claims.

The original Notice of Claim does not, however, include S. Nolan as a plaintiff or alert Defendants to any claims she asserts.  *See* N.Y. Gen. Mun. L. § 50-e(2) (stating the notice "shall" set forth "the name and post-office address of each claimant"); *Rubenstein v. City of N.Y.*, 111 N.Y.S.3d 43, 45 (N.Y. App. Div. 2019) ("A plaintiff may not later add a new theory of liability that was not included in the notice of claim[.]").  Her claims were included for the first time in the Amended Notice of Claim, served on April 18, 2019, and Defendants served their notice of demand for examination within ninety days thereafter.  Plaintiff S. Nolan's argument that the court has discretion to permit her state-law claims against the County to proceed absent evidence of bad faith or prejudice misconstrues the applicable law.  The cases she cites address the sufficiency of plaintiffs' notices of claims, *see Freeland v. Erie Cty.*, 997 N.Y.S.2d 860, 862 (N.Y. App. Div. 2014), and a court's authority to excuse mistakes and omissions regarding the dates, times, and locations in those notices.  *See, e.g., Kim L. v. Port Jervis City Sch. Dist.*, 837 N.Y.S.2d 241, 243 (N.Y. App. Div. 2007); *Power v. Manhattan & Bronx Surface Operating Auth.*, 792 N.Y.S.2d 188, 189 (N.Y. App. Div. 2005).  There is no corresponding flexibility with regard to failing to identify the claimant and the claims she asserts.  The court instead "must construe the notice-of-claim requirements strictly, and a '[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.'"  *Simon v. City of N.Y.*, 2011 WL 317975, at *15 (E.D.N.Y. Jan. 3, 2011) (alteration in original) (quoting *Hardy*, 164 F.3d at 793-94).  Because Plaintiff S.

---

[5] *See also Frantz v. City of Oswego*, 2017 WL 4737258, at *4 (N.D.N.Y. Oct. 19, 2017) (finding a defect in defendants' service of the notice of demand excused the plaintiff's failure to appear at her hearing or examination and did not "prevent her from proceeding with state law claims in this action"); *Gov't Emps. Ins. Co. v. Agostino*, 910 N.Y.S.2d 762, 762 (N.Y. Sup. Ct. 2010) (table decision) (ruling the municipality "waive[d] its right to a 50-h hearing or examination by not demanding it within the [ninety]-day time frame" and the plaintiff was entitled to initiate suit within ninety days of serving the notice of claim).

Nolan was required to timely submit to the § 50-h examination as a condition precedent to suit, her loss of consortium claim and emotional distress claim against the County are DISMISSED. *See Kowalski v. Cty. of Erie*, 566 N.Y.S.2d 890, 891 (N.Y. App. Div. 1991) (holding the lower court should have granted plaintiff's motion to dismiss because "plaintiff failed to comply with defendant's demand for an oral examination pursuant to section 50-h[5] of the General Municipal Law").

Plaintiff S. Nolan's state-law claims against Sheriff Howard, Undersheriff Wipperman, and Defendants Diina and Hartman in their individual capacities, however, are not subject to dismissal for failure to comply with a demand for examination. "Unlike G[en.] M[un.] L[.] § 50-e's notice-of-claim requirement, § 50-h does not refer to claims filed against 'officers, appointees and employees' of municipal corporations." *Bradley v. Golphin*, 2018 WL 480754, at *4 (E.D.N.Y. Jan. 18, 2018) (holding § 50-h did not bar the plaintiff's claim against defendants sued in their individual capacities); *see also Gilliard v. City of N.Y.*, 2013 WL 521529, at *15 n.19 (E.D.N.Y. Feb. 11, 2013) ("[F]ailure to comply with section 50-h precludes only claims against the City, not employees who are sued in their individual capacities alongside the City.").

For the reasons stated above, the court DENIES Defendants' motion to dismiss for noncompliance with a condition precedent insofar as it pertains to Plaintiff J. Nolan's claims and Plaintiff S. Nolan's claims against the individual Defendants and GRANTS Defendants' motion to dismiss Plaintiff S. Nolan's loss of consortium and emotional distress claim against the County (Counts VII and VIII).

**D.      Whether the Court Should Dismiss Plaintiff J. Nolan's Wrongful Termination Claim (Count I).**

Defendants argue that Plaintiff J. Nolan's wrongful termination claim is time-barred because an N.Y. C.P.L.R. Article 78 ("Article 78") proceeding is the proper vehicle for bringing those claims and he failed to initiate an Article 78 proceeding within the authorized time period. In the alternative, Defendants assert that Plaintiff J. Nolan fails to state a plausible claim for relief because the Complaint does not describe his employment relationship with the Sheriff's Department. While conceding that an Article

78 proceeding is the exclusive remedy for reinstatement, Plaintiff J. Nolan counters that he has already been reinstated and thus Article 78 is not a prerequisite to commencing this action. He further contends that he is a permanent civil service employee and as such has a constitutionally protected right to continued employment under New York law.

Article 78 proceedings must be initiated "within four months after the determination to be reviewed becomes final and binding upon the petitioner[.]" *Walton v. N.Y. State Dep't of Corr. Servs.*, 863 N.E.2d 1001, 1005 (N.Y. 2007) (citing N.Y. C.P.L.R. § 217(1)). "A CPLR article 78 proceeding is the exclusive remedy for a discharged public employee, who must seek reinstatement prior to seeking unpaid salary[.]" *Vill. of Northport v. Krumholz*, 93 N.Y.S.3d 419, 420 (N.Y. App. Div. 2019); *see also Austin v. Bd. of Higher Educ. of City of N.Y.*, 158 N.E.2d 681, 686 (N.Y. 1959) ("[A]n article 78 proceeding is the exclusive remedy available to a discharged public employee."). However, "article 78 cannot be interpreted as excluding an action at law" when an agency or department voluntarily reinstates an employee and that employee seeks only unpaid wages because, in such circumstances, "[n]othing remain[s] except the payment of salary at the budgetary rate which [does] not involve the exercise of either administrative or judicial discretion nor present any question requiring review in a special proceeding." *Toscano v. McGoldrick*, 89 N.E.2d 873, 874-75 (N.Y. 1949). The Sheriff's Department voluntarily reinstated Plaintiff J. Nolan following his acquittal from the Petit Larceny charge. Article 78 does not preclude his wrongful termination claim provided he seeks only back pay. *Id.*

In the event that Article 78 does not require dismissal of Plaintiff J. Nolan's wrongful termination claim, Defendants ask that it be dismissed on plausibility grounds because it is "well established" that "New York is an at-will employment state." *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 262 (2d Cir. 2000); *see also Goldman v. White Plains Ctr. for Nursing Care, LLC*, 896 N.E.2d 662, 664 (N.Y. 2008) ("[A]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will[.]") (citation and internal quotation marks omitted). "Under New York's employment-at-will doctrine, an employer has a nearly unfettered right to discharge an

12

employee[,]" *Jones v. Dunkirk Radiator Corp.*, 21 F.3d 18, 21 (2d Cir. 1994), and "New York common law does not recognize a cause of action for the wrongful discharge of an at-will employee." *Sullivan v. Harnisch*, 969 N.E.2d 758, 759 (N.Y. 2012); *see also Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983) ("[A]bsent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.").

Plaintiff J. Nolan alleges that he was "a career law enforcement officer" without further explanation. (Doc. 1 at 13, ¶ 40.) He does not allege that his employment was pursuant to a written contract, and the allegation in his opposition brief that he is a "tenured" law enforcement officer with "a protected property interest in his continued employment" is not contained in his Complaint. (Doc. 5 at 13.) *See Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc.*, 2020 WL 1861410, at *3 (2d Cir. Apr. 14, 2020) (holding district court's dismissal of a complaint was "proper because a complaint may not be amended by advocating a different theory of liability in an opposition brief wholly unsupported by factual allegations in the complaint"); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (finding complaint failed to state claim for relief where allegation of wrongdoing "did not enter the case until Wright mentioned it for the first time in her opposition memoranda to the motion to dismiss").

Although certain civil servants may have a protected property interest in their continued employment, *see* N.Y. Civ. Serv. L. § 75(1) (establishing procedures for terminating a tenured civil servant or a civil servant who has been continuously employed for five years), Plaintiff J. Nolan does not allege this status in his Complaint, nor does he allege that he was employed full-time. *See Carter v. Inc. Vill. of Ocean Beach*, 415 F. App'x 290, 293 (2d Cir. 2011) (holding seasonal and part-time police officers were "at-will" employees "who had no contractual or other basis for asserting any 'entitlement' to continued or future employment" and were not continuous employees pursuant to N.Y. Civ. Serv. L. § 75(1)(c)) (summary order). Even after accepting the allegations in the Complaint as true, Plaintiff J. Nolan fails to allege he was not an at-will employee.

In any event, "New York does not recognize a cause of action sounding in negligent investigation[.]" *Juerss v. Millbrook Cent. Sch. Dist.*, 77 N.Y.S.3d 674, 676 (N.Y. App. Div. 2018); *see also Santiago v. City of Rochester*, 796 N.Y.S.2d 811, 812 (N.Y. App. Div. 2005) ("[T]here is no cause of action in New York for negligent investigation of a crime[.]"). Because Plaintiff J. Nolan's wrongful termination claim is based on Defendants' alleged "improper and negligent investigation" of the May 27, 2018 incident, (Doc. 1 at 15, ¶ 51), he does not state a claim for wrongful termination under New York law.

For the reasons stated above, the court GRANTS Defendants' motion to dismiss Plaintiff J. Nolan's wrongful termination claim (Count I).

### E.   Whether the Court Should Dismiss Plaintiff J. Nolan's Administrative Negligence Claim (Count II).

Defendants move to dismiss Plaintiff J. Nolan's administrative negligence claim on the basis that New York does not recognize this cause of action. Plaintiffs do not clearly oppose dismissal. Because Plaintiff J. Nolan's administrative negligence claim is predicated on Defendants' "fail[ure] to use due care to conduct a proper investigation, which led to a negligent investigation and false charges being brought against Plaintiff [J. Nolan][,]" *id.* at 15, ¶ 56, he fails to state a claim under New York law. *See Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 421 (N.D.N.Y. 2019) (dismissing plaintiff's claim that school negligently conducted a Title IX investigation into alleged sexual assault because it "fails as a matter of New York law" as "'there is no cause of action in the State of New York sounding in negligent prosecution or investigation'") (alteration omitted) (quoting *Prasad v. Cornell Univ.*, 2016 WL 3212079, at *23 (N.D.N.Y. Feb. 24, 2016)); *Hines v. City of N.Y.*, 37 N.Y.S.3d 136, 137-38 (N.Y. App. Div. 2016) (affirming judgment for defendants on plaintiff's claim that defendants "improperly investigated a 2003 report of child abuse" because "New York does not recognize a cause of action sounding in negligent investigation or negligent prosecution"). The court therefore GRANTS Defendants' motion to dismiss Plaintiff J. Nolan's administrative negligence claim (Count II).

**F.     Whether the Court Should Dismiss Plaintiff J. Nolan's Defamation Claim (Count III).**

Pursuant to N.Y. C.P.L.R. § 215(3), Defendants maintain that Plaintiff J. Nolan's defamation claim is barred by a one-year statute of limitations. Plaintiffs counter that this claim is governed by a one-year-and-ninety-day statute of limitations under N.Y. Gen. Mun. Law § 50-i for claims brought against municipal defendants, which takes precedence over C.P.L.R. § 215(3).

The statute of limitations is an affirmative defense that may be raised "in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). The party asserting the defense bears the burden of "establish[ing] when a . . . claim accrues." *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011). "Unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development." *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005); *Delaremore v. Zimmer, Inc.*, 2019 WL 5394566, at *2 (E.D.N.Y. Oct. 22, 2019) (observing that where "the accrual of a statute of limitations depends on various facts and circumstances, further factual development may be necessary before the Court can conclude with legal certainty that the claim is time-barred").

"While federal civil rights claims are governed by a state's general statute of limitations, where a complaint also alleges violations of state law, the state claims must meet their specific statutory requirements." *Boggs v. Town of Riverhead*, 2018 WL 5830824, at *4 (E.D.N.Y. Nov. 7, 2018) (citation and internal quotation marks omitted); *see also Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (dismissing a state-law defamation claim brought in conjunction with § 1983 claims as barred by New York's statute of limitations). Under N.Y. C.P.L.R. § 215(3), an action to recover damages for "libel, slander, [or] false words causing special damages" must be "commenced within one year[.]"

N.Y. Gen. Mun. Law § 50-i(1), on the other hand, provides:

No action or special proceeding shall be prosecuted or maintained against a

city, county, town, village, fire district or school district for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, county, town, village, fire district or school district or of any officer, agent or employee thereof . . . unless . . . the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based[.]

"'[T]he General Municipal Law [§ 50-i] prevails over the general statute of limitation [C.P.L.R. § 215], in respect to the limitation upon commencement of actions in tort against a public corporation[,]'" including actions for defamation. *Murphy v. City of Rochester*, 986 F. Supp. 2d 257, 265 (W.D.N.Y. 2013) (citation omitted) (finding defamation by libel and slander claims against school district were not time-barred under C.P.L.R. § 215); *see also Ripka v. Cty. of Madison*, 80 N.Y.S.3d 479, 481 (N.Y. App. Div. 2018) ("An action against a municipality for defamation must be commenced within one year and [ninety] days from the publication of the allegedly defamatory statements[.]").

> New York courts have held that the one-year-and-ninety-day statute of limitations applies to claims not only against municipalities themselves, but also against "any officer, agent, or employee thereof," Gen. Mun. Law § 50-i(1), if the municipality is required to indemnify the defendant pursuant to the General Municipal Law or any other statutory provision and is therefore "the real party in interest."

*Conte v. Cty. of Nassau*, 596 F. App'x 1, 5 (2d Cir. 2014) (quoting *Ruggiero v. Phillips*, 739 N.Y.S.2d 797, 799-800 (N.Y. App. Div. 2002)) (summary order). "The obligation to indemnify in turn depends upon the resolution of the fact-sensitive question of whether [the employees] were acting within the scope of their employment . . . in committing the alleged tortious acts[.]" *Int'l Shared Servs., Inc. v. Cty. of Nassau*, 634 N.Y.S.2d 722, 724 (N.Y. App. Div. 1995).

Plaintiff J. Nolan's defamation claim accrued when Sheriff Howard made his allegedly defamatory statement on or about June 26, 2018. *See Melious v. Besignano*, 4 N.Y.S.3d 228, 229 (N.Y. App. Div. 2015) (holding a defamation cause of action "accrues at the time the alleged statements are originally uttered"). Plaintiffs filed suit in New York Supreme Court on September 5, 2019, within one year and ninety days of that

statement.

The Complaint inconsistently alleges that Sheriff Howard acted for all causes of action both "in the course of [his] employment with Defendant Sheriff's Department" and "maliciously, intentionally, wantonly and/or negligently[,] and . . . outside the scope of [his] respective employment[] with Defendant Sheriff's Department or in excess of [his] authority pursuant to said employment." (Doc. 1 at 10, ¶¶ 16-17.) The statute of limitations turns on whether Sheriff Howard was acting within the scope of his employment and the County has a duty to indemnify him. Because there are conflicting assertions regarding Sheriff Howard's activities and "the work duties associated therewith, or the manner in which the alleged conduct fell within the scope of [his] employment[,] . . . resolution of the [statute of limitations] issue must await discovery and further motion practice or trial[.]" *Int'l Shared Servs., Inc.*, 634 N.Y.S.2d at 724; *see also Frey v. Bekins Van Lines, Inc.*, 748 F. Supp. 2d 176, 182 (E.D.N.Y. 2010) (denying a motion to dismiss on statute of limitations grounds because "[t]he court . . . must await the development of facts before it can properly categorize the claims, when they arose, and which statute of limitation applies"). The court therefore DENIES Defendants' motion to dismiss Plaintiff J. Nolan's defamation claim (Count III).

### G.   Whether the Court Should Dismiss Plaintiff J. Nolan's Harassment Claim (Count IV).

Defendants seek dismissal of Plaintiff J. Nolan's harassment claim because common-law harassment is not a legally cognizable claim under New York law. Plaintiffs do not affirmatively oppose dismissal of this claim.

"New York does not recognize a common-law cause of action alleging harassment[.]" *Mago, LLC v. Singh*, 851 N.Y.S.2d 593, 594 (N.Y. App. Div. 2008) (affirming dismissal for failure to state a cause of action in landlord's action to recover unpaid rent); *accord DiBlanca v. Town of Marlborough*, 2014 WL 2866341, at *8 (N.D.N.Y. June 24, 2014) (dismissing New York common-law harassment claims brought pursuant to 42 U.S.C. § 1983 in conjunction with First Amendment claims against municipal defendants who allegedly instigated campaign to drive plaintiff's

towing company out of business); *Scialdone v. Stepping Stones Assocs., L.P.*, 50 N.Y.S.3d 413, 415 (N.Y. App. Div. 2017) (affirming dismissal of common-law harassment claim arising from eviction from parking space). The court therefore GRANTS Defendants' motion to dismiss Plaintiff J. Nolan's harassment claim (Count IV).

## H. Whether the Court Should Dismiss Plaintiff J. Nolan's Fourteenth Amendment Due Process Claim (Count V).

Defendants maintain Plaintiff J. Nolan fails to plausibly allege a 42 U.S.C. § 1983 claim for deprivation of his due process rights under the Fourteenth Amendment because he has not pled that he has a property interest in his continued employment and because he asserts only conclusory allegations regarding the County's policy and custom of wrongfully terminating and retaliating against employees. Section 1983 is "not itself a source of substantive rights[,]" but instead provides a vehicle "for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "'To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Feingold v. N.Y.*, 366 F.3d 138, 159 (2d Cir. 2004) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). The parties do not dispute that Defendants Sheriff Howard and Undersheriff Wipperman as well as Defendants Diina and Hartman acted at all times under the color of New York law.

"The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)). Courts must "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State," and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient[.]" *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)

(citations omitted). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it." *Id.*; *see also Bernheim v. Litt*, 79 F.3d 318, 322 (2d Cir. 1996) ("To state a cause of action under the due process clause, a plaintiff must show that [he or] she has a property interest, created by state law, in the employment or the benefit that was removed.").

Because Plaintiff J. Nolan does not allege that he was a full-time employee with a contractual right to further employment, he has not pled sufficient facts to support a reasonable inference that he had a property interest in his continued employment. *See Longo v. Suffolk Cty. Police Dep't Cty. of Suffolk*, 429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006) ("Employment, itself, does not create a federally protected property right, absent a statutory or contractual provision creating a right to continued employment."). Although Plaintiff J. Nolan asserts in his opposition that he is a tenured police officer with a protected property interest, he may not use his opposition to amend his Complaint. *See Wright*, 152 F.3d at 178 (dismissing claim where plaintiff made allegation in opposition to motion to dismiss). His procedural due process claim under § 1983 must therefore fail.

Even if Plaintiff J. Nolan could plausibly allege a protected property interest, he does not plausibly plead the existence of a policy or custom in anything but a conclusory manner.[6] Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a municipality may be liable under § 1983 for its employees' unconstitutional actions "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). To assert a *Monell* claim, Plaintiffs must plead: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a

---

[6] Plaintiffs cite *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983), and *Escalera v. N.Y.C. Hous. Auth.*, 425 F.2d 853, 857 (2d Cir. 1970), for the proposition that a complaint will survive dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (Doc. 5 at 14) (citing *Batista*, 702 F.2d at 397). That precedent was based upon *Conley v. Gibson*, 355 U.S. 41 (1957), which was overruled by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009).

denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Plaintiff J. Nolan alleges that the County "had a custom, policy and practice of retaliating against officers who sought legal redress against the Defendants herein" and that his harassment, termination of employment, and arrest occurred "pursuant to a policy and custom of Defendants County of Erie and Erie County Sheriff's Department." (Doc. 1 at 19, ¶¶ 84-86.) Construing this allegation in Plaintiff J. Nolan's favor, his *Monell* claim amounts to no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678; *see also Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("'[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference[.]'") (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993)).

Because Plaintiff J. Nolan does not allege a plausible claim for a procedural due process violation under § 1983 and the Fourteenth Amendment, the court GRANTS Defendants' motion to dismiss that claim (Count V) without reaching Defendants' alternative argument that the claim is time-barred for failure to initiate an Article 78 proceeding, which allegedly would have provided an adequate post-deprivation remedy.[7]

**I.    Whether the Court Should Dismiss Plaintiff J. Nolan's Intentional Infliction of Emotional Distress Claim (Count VI)**

Defendants set forth three bases for dismissal of Plaintiff J. Nolan's intentional infliction of emotional distress claim, to which Plaintiffs do not respond. First, they

---

[7] Article 78 proceedings often constitute sufficient procedural due process foreclosing a § 1983 claim against municipalities. *See, e.g.*, *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit."). However, an Article 78 proceeding is not available following voluntary reinstatement to a claimant who seeks only back pay. *See Golomb v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 460 N.Y.S.2d 805, 808 (N.Y. App. Div. 1983) (holding a voluntarily reinstated plaintiff could not bring an Article 78 proceeding for back pay alone "in the absence of any suggestion . . . that [her] salary was fixed by something other than contract (e.g., ordinance, regulation, or by-law)").

argue this claim is barred by the same statute of limitations as Plaintiff J. Nolan's defamation claim. As with defamation causes of action, the one-year-and-ninety-day statute of limitations under N.Y. Gen. Mun. L. § 50-i overrides the one-year statute of limitations set forth in C.P.L.R. § 215(3) for intentional infliction of emotional distress claims alleged against municipal corporations and any individuals they must indemnify. *See Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016) (holding the one–year–and–ninety–day statute of limitations applied to intentional infliction of emotional distress claim against "the City (or an individual whom the City must indemnify)") (citing N.Y. Gen. Mun. L. § 50-i); *see also Bratton*, 147 F. Supp. 2d at 193 ("[I]n light of specific language in § 50–i(3), the statute is intended to override inconsistent provisions of law, and the longer one-year and ninety-day limitations period applies to claims against City Defendants for intentional infliction of emotional distress.") (collecting cases).

Plaintiff J. Nolan alleges that the actions underlying his intentional infliction of emotional distress claim "were performed [by the individual Defendants and their identified agents] in the furtherance of their respective employment with Defendant Sheriff's Department." (Doc. 1 at 20, ¶ 91); *see also Int'l Shared Servs., Inc.*, 634 N.Y.S.2d at 724 (noting the obligation to indemnify "depends upon the resolution of the fact-sensitive question of whether [the employees] were acting within the scope of their employment" when committing the alleged torts). Accepting the factual allegations in the Complaint as true, Plaintiff J. Nolan's intentional infliction of emotional distress claim is timely as it was filed within one year and ninety days of his June of 2018 arrest.

Defendants fare better with their argument that, under New York law, "public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity[.]" *Ball v. Miller*, 83 N.Y.S.3d 169, 172 (N.Y. App. Div. 2018), *leave to appeal denied*, 115 N.E.3d 630 (2018) (quoting *Lauer v. City of N.Y.*, 659 N.Y.S.2d 57, 58 (N.Y. App. Div. 1997)); *accord Jones v. City of N.Y.*, 988 F. Supp. 2d 305, 318 (E.D.N.Y. 2013) (dismissing intentional infliction of emotional distress claims against city and district attorney's office on this basis). Although public policy considerations do not prohibit Plaintiff J. Nolan from asserting an intentional infliction of

emotional distress claim against the individual Defendants, his claim against the County must be DISMISSED. *See Logan v. City of Schenectady*, 2019 WL 3803631, at *8 (N.D.N.Y. Aug. 13, 2019) (dismissing intentional infliction of emotional distress claim against the City and holding plaintiff "may proceed with his claim for intentional infliction against the Individual Defendants").

Defendants further argue that Plaintiff J. Nolan's intentional infliction of emotional distress claim "reads as a conglomeration of several claims which are either time-barred or not recognized in New York" and does not meet the requirements for pleading this claim. (Doc. 4-1 at 14.)

The tort of intentional infliction of emotional distress has "four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post. Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). This standard is "rigorous[] and difficult to satisfy." *Id.* (citation omitted). The first element is met "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]" *Murphy*, 448 N.E.2d at 90 (quoting Restatement (Second) of Torts § 46, cmt. d, subd.[1]); *see also Howell*, 612 N.E.2d at 702 (noting every intentional infliction of emotional distress claim to come before the New York Court of Appeals "has failed because the alleged conduct was not sufficiently outrageous"). In determining whether the pattern of conduct pled is sufficiently extreme, "the proper inquiry is not merely whether each individual act might be outrageous. Rather, the question is whether those actions—under the totality of the circumstances—amounted to a deliberate and malicious campaign." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 123 (2d Cir. 2019).

Plaintiff J. Nolan asserts "Defendants' actions in conducting an improper and negligent and deficient investigation leading to the termination of [his] job, arrest, and harassment of and retaliation against [him] were outrageous, shocking[,] and exceeded all reasonable bounds of decency." (Doc. 1 at 19, ¶ 89.) Although Defendants' alleged

negligence does not suffice, Plaintiff J. Nolan further alleges that Sheriff Howard falsely accused him of committing a crime and engaging in conduct involving moral turpitude and did so knowing that the false statement would damage Plaintiff J. Nolan's employment, career, and would subject him to public ridicule and scorn. Plaintiff J. Nolan also alleges that Defendant Hartman, upon confronting Plaintiff J. Nolan with the accusation that he stole an ammunition magazine, gave him "the option" of resigning or being arrested that day. *Id.* at 12, ¶ 30. These allegations, if established, arguably constitute outrageous conduct.

In contrast, Plaintiff J. Nolan's further allegations regarding administrative sanctions such as the abrupt termination of extended sick leave, a statement that he may have "burn[ed] too many bridges[,]" *id.* at 17, ¶ 72, and the use of a profanity by Defendants' agent at their behest do not constitute a "longstanding campaign of deliberate, systematic and malicious harassment" necessary to give rise to an intentional infliction of emotional distress claim. *Seltzer v. Bayer*, 709 N.Y.S.2d 21, 23 (N.Y. App. Div. 2000) (dismissing intentional infliction of emotional distress claim where defendant dumped cement in front of plaintiff's house, threw lit cigarettes into plaintiff's backyard, egged plaintiff's front steps, and threatened to paint a swastika on plaintiff's house, which the court characterized as "three alleged incidents of littering and a particularly nasty remark"); *see also Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 442 (S.D.N.Y. 1997) ("The New York courts appear to require that plaintiffs allege either an unrelenting campaign of day in, day out harassment or that the harassment was accompanied by physical threats, in order to state a cognizable claim for intentional infliction of emotional distress.").

Although a close call, the court cannot find, as a matter of law, that Plaintiff J. Nolan's intentional infliction of emotional distress claim has not been plausibly pled. *Compare Wyllie v. Dist. Atty. of Cty. of Kings*, 770 N.Y.S.2d 110, 113, 115 (N.Y. App. Div. 2003) (affirming judgment dismissing intentional infliction of emotional distress claim brought by assistant district attorney premised on alleged false arrest for theft where an official made a statement about the arrest in the press and plaintiff's

employment was suspended, even though she was not indicted by the grand jury, because conduct was not extreme or outrageous) *with Sullivan v. Bd. of Educ. of Eastchester Union Free Sch. Dist.*, 517 N.Y.S.2d 197, 199 (N.Y. App. Div. 1987) (holding high school principal adequately pled intentional infliction of emotional distress claim against Board of Education where he alleged the Board "used the threat of bringing falsified charges against him to coerce him into resigning from his tenured position"); *Kaminski v. United Parcel Serv.*, 501 N.Y.S.2d 871, 872-73 (N.Y. App. Div. 1986) (finding intentional infliction of emotional distress claim survived motion to dismiss where plaintiff alleged he was threatened with prosecution and prison if he did not resign from employment and admit to wrongdoing, the threats were accompanied by three hours of "loud, aggressive, profane[,] and obscene language and gestures[,]" and defendants blocked plaintiff from leaving the room until he resigned).

For the foregoing reasons, the court DENIES Defendants' motion to dismiss Plaintiff J. Nolan's intentional infliction of emotional distress claim against the individual Defendants (Count VI).

### J.   Whether the Court Should Dismiss Plaintiffs' Negligent Infliction of Emotional Distress Claims (Count VII).

Defendants seek dismissal of Plaintiff J. Nolan's negligent infliction of emotional distress claims because New York's workers' compensation statute, N.Y. Workers' Comp. L. § 29(6), contains an exclusivity clause prohibiting him from bringing causes of action for negligent infliction of emotional distress against employers or persons in their employ. Alternatively, they assert that he fails to satisfy *Iqbal*'s pleading standard because his allegations "are nothing more than a recitation of the elements of a negligent infliction of emotional distress claim." (Doc. 4-1 at 16.)

Under N.Y. Workers' Comp. L. § 29(6),

> The right to compensation or benefits under this chapter[] shall be the exclusive remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ . . . . The limitation of liability of an employer . . . for the injury or death of an employee shall be applicable to another in the same employ[.]

This exclusivity provision bars common-law negligence claims against an

employer or co-employees premised on a "hostile working environment." *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997). Courts in the Second Circuit have extended the *Torres* ruling to preclude negligent infliction of emotional distress claims. *See, e.g., D'Annunzio v. Ayken, Inc.*, 25 F. Supp. 3d 281, 294 (E.D.N.Y. 2014) (dismissing negligent infliction of emotional distress claim as "barred by the New York[] Workers' Compensation Law"); *Lueck v. Progressive Ins., Inc.*, 2009 WL 3429794, at *4 (W.D.N.Y. Oct. 19, 2009) (dismissing plaintiff's negligent infliction of emotional distress claim against his employer, "[e]ven if the Complaint adequately alleged th[is] cause[] of action," because "the New York Workers' Compensation Law 'is the exclusive remedy[']") (citing N.Y. Workers' Comp. L. § 29(6)); *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659, 666 (S.D.N.Y. 2007) (holding plaintiff's negligent infliction of emotional distress claim against her employer was "barred by the exclusivity provision of New York Workers' Compensation Law, which provides the sole remedy for damages caused by the negligence of one's employer").

Although Plaintiffs contend that the statute does not apply to claims against Defendants sued in their individual capacities, N.Y. Workers' Comp. L. § 29(6) expressly applies when an employee is injured by the "negligence or wrong of another in the same employ[.]" New York's workers' compensation scheme is thus the "exclusive remedy when both the plaintiff and the defendant are acting within the scope of their employment, as coemployees, at the time of injury[.]" *Power v. Frasier*, 15 N.Y.S.3d 382, 384 (N.Y. App. Div. 2015); *see also Silberstein v. Advance Magazine Publishers, Inc.*, 988 F. Supp. 391, 394-95 (S.D.N.Y. 1997) (holding that under N.Y. Workers' Comp. L. § 29(6), "an employee may not sue his or her employer or co-employee for injury allegedly caused by negligent supervision") (footnote omitted).

Even if the workers' compensation bar did not apply, the Complaint contains nothing beyond conclusory allegations that the "actions of the individual Defendants caused Plaintiffs to fear for their physical safety." (Doc. 1 at 21, ¶ 98.) This is patently insufficient. *See Savva v. Longo*, 779 N.Y.S.2d 129, 131 (N.Y. App. Div. 2004) (ruling negligent infliction of emotional distress claims "must generally be premised upon

conduct that unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety") (citation and internal quotation marks omitted).

For the reasons stated above, the court GRANTS Defendants' motion to dismiss Plaintiffs' negligent infliction of emotional distress claim (Count VII).

### K.      Whether the Court Should Dismiss Plaintiff S. Nolan's Loss of Consortium Claim (Count VIII).

Defendants argue that Plaintiff S. Nolan's loss of consortium claim should be dismissed against the individual Defendants because it is derivative of Plaintiffs' other claims for relief which do not survive a motion to dismiss. Under New York law, "since the cause of action to recover damages for loss of consortium is derivative in nature, the dismissal of the primary causes of action also necessitates dismissal of the loss of consortium cause of action[.]" *Paisley v. Coin Device Corp.*, 773 N.Y.S.2d 582, 583 (N.Y. App. Div. 2004); *accord Holmes v. City of New Rochelle*, 593 N.Y.S.2d 320, 321 (N.Y. App. Div. 1993). Because the court did not dismiss Plaintiff J. Nolan's defamation or intentional infliction of emotional distress claims, the court DENIES Defendants' motion to dismiss Plaintiff S. Nolan's loss of consortium claim against the individual Defendants (Count VIII).

### L.      Whether the Court Grants Plaintiffs Leave to Amend.

Federal Rule of Civil Procedure 15(a) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Plaintiffs are hereby conditionally GRANTED leave to amend and may submit a proposed Amended Complaint within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

### CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART

Defendants' motion to dismiss (Doc. 4) and conditionally grants Plaintiffs leave to amend.

SO ORDERED.

Dated this ___24th___ day of April, 2020.

Christina Reiss, District Judge
United States District Court