UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

JEREMIAH NOLAN, JR., and SANDRA NOLAN, Individually and as Husband and Wife,

Plaintiffs,

v.

COUNTY OF ERIE, TIMOTHY B. HOWARD, MARK N. WIPPERMAN, THOMAS DIINA, and JEFFREY HARTMAN,

Defendants.

Case No. 1:19-cv-01245

**OPINION AND ORDER DENYING LEAVE TO AMEND FOR PLAINTIFFS' PROPOSED AMENDMENTS TO THE COMPLAINT, GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, ORDERING PLAINTIFFS TO PROVIDE A MORE DEFINITE STATEMENT, AND DENYING PLAINTIFFS' MOTION FOR SANCTIONS**
(Docs. 10 & 11)

Plaintiffs Jeremiah Nolan, Jr., ("Plaintiff J. Nolan") and Sandra Nolan ("Plaintiff S. Nolan" and, collectively, "Plaintiffs") bring this action against Defendants County of Erie (the "County"), Sheriff of Erie County Timothy B. Howard, Undersheriff of Erie County Mark N. Wipperman, and Sheriff of Erie County employees Thomas Diina and Jeffrey Hartman (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 and New York common law, alleging that Plaintiff J. Nolan was wrongfully terminated from his employment at the Erie County Sheriff's Department (the "Sheriff's Department") following a negligent investigation into an alleged incident of theft.

On April 24, 2020, the court issued an Opinion and Order granting in part and denying in part Defendants' motion to dismiss Plaintiffs' original Complaint and

conditionally granting Plaintiffs leave to amend. On May 14, 2020, Plaintiffs filed a proposed Amended Complaint (the "PAC"), which Defendants moved to dismiss on May 21, 2020. (Doc. 10.) Plaintiffs filed an opposition on June 4, 2020 in which they also requested sanctions against Defendants for prematurely moving to dismiss their PAC. (Doc. 11.) On June 15, 2020, Defendants filed a reply, at which time the court took the pending motions under advisement.

Plaintiffs are represented by Steven M. Cohen, Esq., and William A. Lorenz, Jr., Esq. Defendants are represented by Erin Elizabeth Molisani, Esq., and Kenneth R. Kirby, Esq.

**I. Allegations in the PAC.**

Plaintiffs are husband and wife who reside in the County of Erie in New York. Plaintiff J. Nolan has been a full-time employee of the County since December 2005. Pursuant to a collective bargaining agreement, Plaintiff J. Nolan has been considered a permanent employee of the County since approximately December 2015. Sheriff Howard, Undersheriff Wipperman, and Defendants Diina and Hartman reside in the County and were, at all relevant times, employees of the County (the "individual Defendants").[1] Plaintiffs allege that these individual Defendants engaged in all acts alleged in the Complaint in the course of their employment and under the color of New York law in their official and individual capacities. Alternatively, Plaintiffs allege that these individual Defendants acted maliciously and intentionally outside the scope of their employment.

On approximately May 27, 2018, Plaintiff J. Nolan was working in a Sheriff's Department facility at the Erie County Medical Center ("ECMC") and found a magazine pouch in a desk drawer on the ninth floor. Based on written directives "detailed in said ECMC [o]ffice," he "moved the magazine pouch to the top of a gun box" in the ECMC office. (Doc. 9 at 5, ¶ 29.) His union representative informed him approximately six days

[1] Plaintiffs do not allege in what capacity Defendants Diina and Hartman were employed by the Sheriff's Department. This same information was also omitted from Plaintiffs' original Complaint. The court noted its absence in its April 24, 2020 Opinion and Order.

later that he was accused of stealing an ammunition magazine from the ECMC office.

On June 8, 2018, Plaintiff J. Nolan met with Defendant Hartman, who gave Plaintiff the option to either resign from the employment of the County or charges would be filed against him and he would be arrested that day. Plaintiff J. Nolan attempted to explain "the circumstances surrounding the accusation, explained it was a magazine pouch without a magazine, where he put it and why, and Defendants refused to listen." *Id.* at 6, ¶ 33. The same day, Plaintiff received a letter from the Sheriff's Department, signed by Defendants Diina and Hartman, placing him on administrative leave without pay and ordering him to home confinement from June 8, 2018 through June 14, 2018. He asserts that the order of home confinement "was improper, unlawful[,] and without legal justification[,]" *id.* at ¶ 35, and that his attempts "to explain the facts of the situation[] and the errors and legal insufficiencies of and committed by Defendants were futile." *Id.* at ¶ 37.

On or about June 22, 2018, Plaintiff J. Nolan's employment was terminated by Undersheriff Wipperman, Defendants Diina and Hartman, and the County "as a result of an intentionally deficient and improper and negligent investigation[.]" *Id.* at 7, ¶ 38. He subsequently had night terrors and "feelings of paranoia, duress, chest pains, trouble breathing, severe sweating, and disorientation upon waking up." *Id.* at ¶ 39.

On or about June 26, 2018, Plaintiff J. Nolan was arrested for Petit Larceny, a Class A misdemeanor, which he contends, "if sustained, would forever be an impediment to future employment as a police officer." (Doc. 9 at 7, ¶ 42.) That same day, Sheriff Howard published or released the following allegedly defamatory statement to various press and media outlets regarding Plaintiff J. Nolan: "I cannot understand how a sworn officer could take another officer's lifeline—the magazines for his duty gun. It was evident that his misconduct warranted his termination." *Id.* at ¶ 43. This statement was then published in a news article titled: "What one Erie County Sheriff's deputy did that got him arrested and fired[.]" *Id.* at 10, ¶ 62. Plaintiff J. Nolan asserts that Sheriff Howard's statement accusing him of committing a crime "and/or conduct involving moral turpitude" was false when made, was made with malice, and that Sheriff Howard

"knew or should have known the statements were false or should have had serious doubts about their truth, and published the statements anyway, with a reckless disregard of [their] probable falsity." *Id.* at ¶¶ 64-67.

Following a bench trial on December 17, 2018, Plaintiff J. Nolan was acquitted of misdemeanor Petit Larceny. He was informed on December 22, 2018 that he would be reinstated as an employee of the County, and Defendants and Plaintiff J. Nolan's union representative advised he was entitled to full payment of back wages. Plaintiff J. Nolan returned to work on March 26, 2019 but has not yet received any back pay.

Upon returning to work, Plaintiff J. Nolan experienced "hostility and retaliation" from "agents and/or employees of all Defendants[,]" which, in conjunction with the negative publicity of his arrest and his termination, caused "great stress" to him and his wife. *Id.* at 8, ¶¶ 48-49. Plaintiff J. Nolan alleges he has "a history of asserting his rights and filing grievances through proper channels against . . . Defendants" and of "seeking legal redress against Defendants for conduct [he] deemed illegal or wrong[,]" which Defendants have purportedly resented. *Id.* at ¶¶ 50-51. He asserts that he was "subjected to both suspension and discharge for being a 'whistleblower'[;] that is, disclosing and threatening to disclose to supervisors and the public certain negative activities, policies, or practices of [the County] and its employees" which he allegedly objected to or refused to participate in and which would violate New York and federal "laws, rules, and regulations[.]" *Id.* at 11, ¶ 70.

Plaintiff J. Nolan contends that upon clearing his name and attaining reinstatement as a police officer, he received from Defendants' agents "threatening comments, harassing behavior, denial to use restroom, etc., which rendered [him] deeply emotionally distraught." *Id.* at ¶ 71. On February 13, 2019, his extended sick leave was allegedly "abruptly stopped without just cause" even though he submitted the required paperwork. *Id.* at ¶ 72. On or about March 25, 2019, Defendants' "agent[,]" Lieutenant Adamek, allegedly told Plaintiff J. Nolan: "Looks like you burnt too many bridges around here[.]" *Id.* at ¶ 73. Lieutenant Adamek subsequently forced Plaintiff J. Nolan to work an additional eight-hour shift contrary to overtime restrictions imposed pursuant to the

Family Medical Leave Act ("FMLA") and unjustly sanctioned Plaintiff J. Nolan for "leaving his post under circumstances which didn't warrant that sanction[.]" *Id.* at 12, ¶ 74. Plaintiff J. Nolan alleges other employees were not sanctioned for this same conduct.

Plaintiff J. Nolan further alleges that, on or about March 28, 2019, Deputy Marc Scarpace told Plaintiff J. Nolan to "fuck yourself" in front of others "at the behest and instance of Defendants" and that when he reported the incident, Defendants refused to "process or act on" it. (Doc. 9 at 12, ¶¶ 76-78.) On or about April 5, 2019, he was ordered to return his Policy and Procedures binder when other employees were not instructed to do so. On or about April 23, 2019, he was "written up for exhaustion of his FMLA time despite having eight hours remaining." *Id.* at ¶ 80. Chief Union Steward Deputy Mark Geary allegedly called this series of events a "witchhunt." *Id.* at ¶ 81.

In Count I of the PAC, Plaintiff J. Nolan asserts all Defendants wrongfully terminated him under N.Y. Civ. Serv. L. § 75(1) because he is a civil servant "who has been continuously employed for well over five years" and thus "had a protected property interest in his continued employment[.]" *Id.* at 8, ¶ 54. He alleges his employment could only be terminated under § 75(1) for incompetency or misconduct shown after a hearing upon stated charges and, because he did not receive that hearing, he was wrongfully terminated.

In Count II, Plaintiff J. Nolan asserts a defamation *per se* claim against unspecified Defendants based on the statements Sheriff Howard made to the media.[2] In Count III, Plaintiff J. Nolan asserts a cause of action for "employer retaliation against employee" as to all Defendants. *Id.* at 11 (emphasis omitted). In Count IV, Plaintiff J. Nolan asserts that all Defendants violated his civil rights under the Fourteenth Amendment of the United States Constitution by wrongfully terminating him without a

[2] In its April 24, 2020 Opinion and Order, the court noted Plaintiffs' original Complaint was ambiguous regarding against whom Plaintiff J. Nolan intended to assert his defamation claim. The PAC does not remedy this ambiguity. *See* Doc. 9 at 11, ¶ 68 ("As a result of the [Defendants'] false and defamatory statements, Plaintiffs have incurred losses, damages, and special damages, including out of pocket pecuniary losses[.]").

proper hearing despite the fact that his employment with the County "was of a full-time nature, with a contractual right to permanent employment pursuant to a collective bargaining agreement and protected by" N.Y. Civ. Serv. L. § 75(1). *Id.* at 13, ¶ 84. Plaintiff J. Nolan further alleges that the County and Sheriff's Department "had a custom, policy and practice of retaliating against officers who sought legal redress against" Defendants and the harassment, termination, and arrest of Plaintiff J. Nolan was "pursuant to a policy and custom" of the County and Sheriff's Department. *Id.* at 13, ¶¶ 86, 88.

In Count V of the PAC, Plaintiff J. Nolan asserts a claim of intentional infliction of emotional distress against the individual Defendants. In Count VI, his wife, Plaintiff S. Nolan, alleges loss of consortium against those same Defendants "[a]s a result of the negligence and deprivation of liberty by Defendants in conjunction with the wrongful termination inflicted upon Plaintiff [J.] Nolan[.]" (Doc. 9 at 16, ¶ 98.)

Plaintiffs seek damages for their financial, emotional, and physical injuries; Plaintiff J. Nolan's back pay; special damages for Plaintiff J. Nolan's defamation *per se* claim; costs; and attorney's fees.

Prior to filing his original Complaint, Plaintiff J. Nolan, then self-represented, served upon the County and Sheriff's Department a written Notice of Claim pursuant to N.Y. Gen. Mun. L. § 50-e on September 20, 2018 (the "Original Notice of Claim").[3] Plaintiffs served an Amended Notice of Claim on April 18, 2019, which was attached to the original Complaint as Exhibit A (the "Amended Notice of Claim").[4] Plaintiffs filed

[3] Although the Original Notice of Claim is not attached to the PAC, the court may consider its contents because it is referenced therein. *See Lynch v. City of N.Y.*, 952 F.3d 67, 79 (2d Cir. 2020) ("It is well established that a pleading is deemed to include any written instrument that . . . is incorporated in it by reference[.]") (citation and internal quotation marks omitted).

[4] The PAC states that the Amended Notice of Claim is attached as Exhibit A; however, the PAC does not include any exhibits. Because it "is clear to the court that [P]laintiff intended to attach the exhibit[] to his amended complaint[,]" the court will consider it even though the PAC supersedes the original Complaint. *Rucano v. Koenigsmann*, 2016 WL 4919951, at *1 n.3 (N.D.N.Y. Sept. 15, 2016) (considering exhibits to "original complaint as incorporated by reference in the amended complaint"); *see also Prutsman v. Addison Cent. Sch. Bd.*, 2018 WL 838319, at *1 n.1 (W.D.N.Y. Feb. 13, 2018) (considering "the exhibits attached to the original

suit on September 5, 2019 in New York Supreme Court, County of Erie, prior to their submitting to their October 1, 2019 examination as required by N.Y. Gen. Mun. L. § 50-h(1). Defendants removed the action to this court on September 16, 2019.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (citation and internal quotation marks omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). "Generally, a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (alteration, citation, and internal quotation marks omitted). "A proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'" *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (footnote omitted)).

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that

---

complaint as if they were submitted with the PAC" even though the PAC did "not attach any of the exhibits to which it refers" because it was "apparent that it refers to the same exhibits as those attached to the original complaint").

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Id.* (quoting *Twombly*, 550 U.S. at 555). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

### B. Whether Defendants' Motion to Dismiss Is Premature and Warrants Sanctions Under Fed. R. Civ. P. 11.

As a threshold matter, Plaintiffs assert that Defendants' motion to dismiss must be denied as premature because the PAC was a "proposed" amendment and the court has not yet ruled on whether its leave to amend extends to the proposed amendments. Plaintiffs ask that Defendants be sanctioned pursuant to Fed. R. Civ. P. 11(b) for causing Plaintiffs' counsel to devote resources to responding to a motion to dismiss in the context of the PAC. In response, Defendants request that the court construe their motion to dismiss as objections to the PAC.

The court conditionally granted Plaintiffs leave to amend their Complaint provided the proposed amendments were not futile, made in bad faith, caused undue delay, or caused undue prejudice to Defendants. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("Leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'") (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). There is nothing that bars

Defendants from moving to dismiss while a court decides a pending motion for leave to amend.[5] Indeed, courts routinely decide motions to dismiss while proposed amendments are pending. *See, e.g.*, *A.M. by & through Messineo v. French*, 431 F. Supp. 3d 432, 438 (D. Vt. 2019) (considering motion to dismiss while motion for leave to amend was pending by "consider[ing] Defendant's arguments for dismissal in light of the FAC"); *Cole v. Foxmar Inc.*, 387 F. Supp. 3d 370, 379 (D. Vt. 2019) (considering the merits of pending motions to amend and dismiss "in tandem"). Consideration of both motions simultaneously will allow the court to "determine whether the amendments would be futile and at the same time consider whether a claim should be dismissed." *Phillips v. Orleans Cnty.*, 2019 WL 3088051, at *4 (W.D.N.Y. July 15, 2019). The court therefore declines to deem Defendants' motion to dismiss untimely.

Plaintiffs seek Rule 11 sanctions against Defendants on the further grounds that Defendants' motion to dismiss is frivolous and needlessly increases the cost of litigation. Pursuant to Fed. R. Civ. P. 11(b), by "presenting to the court a pleading, written motion, or other paper[,]" an attorney certifies that the document "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(1)-(2). If the court determines Rule 11 has been violated, it may impose "an appropriate sanction" on the attorneys, law firm, or party responsible for the violation. Fed. R. Civ. P. 11(c). "[T]he standard for triggering the award of fees under Rule 11 is objective

[5] The two cases Plaintiffs cite are inapposite. In *Bank of Am. v. TemPay LLC*, 2019 WL 9359721, at *1 (W.D.N.Y. Nov. 7, 2019), the magistrate judge found the defendants' motion to dismiss was premature "[s]ince the status of that amended pleading was not yet determined" but construed the motion to dismiss as a response to the motion to amend. *Id.* at *1. In *Harmon v. Johnson*, 1990 WL 67401, at *1 (S.D.N.Y. May 15, 1990), the defendant's motion to dismiss a proposed amended complaint was denied as premature because the court dismissed the plaintiffs' original complaint due to improper venue. *Id.* (holding because "it would seem advisable for the [plaintiffs] to file their proposed amended complaint in the Eastern District where venue apparently lies and to discontinue this action," the defendant's "motion to dismiss the proposed amended complaint is denied without prejudice as premature").

unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000).

Here, Plaintiffs filed the PAC without an accompanying memorandum of law and did not designate their submission as a "proposed" Amended Complaint. Under these circumstances, it is not "clear under existing precedents" that Defendants were precluded from filing a motion to dismiss. *See Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999) (internal quotation marks omitted) (citing standard for frivolity under Rule 11). Moreover, filing the motion to dismiss before the court granted leave to amend may have actually reduced the costs of litigation by consolidating the briefing on amendment and dismissal, thereby promoting "the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. Finding no violation of Fed. R. Civ. P. 11, Plaintiffs' motion for sanctions is DENIED.

### C. Whether the Court Should Dismiss Plaintiff J. Nolan's Cause of Action for Wrongful Termination (Count I).

Defendants assert that Plaintiff J. Nolan's claim for wrongful termination must be dismissed because it alleges a theory of liability not contained in the Original Notice of Claim or Amended Notice of Claim. "As a general rule, state notice-of-claim statutes apply to state-law claims asserted as pendant claims in a federal action." *MacIntyre v. Moore*, 335 F. Supp. 3d 402, 411 (W.D.N.Y. 2018) (citation and internal quotation marks omitted). Pursuant to N.Y. Gen. Mun. L. § 50-e(2), a notice of claim must set forth:

> (1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable[.]

*Id.*

Not every cause of action in the Notice of Claim "need be set forth *in haec verba*, as long as the details pertaining to such a claim are described sufficiently with respect to time, place[,] and manner to enable the city to investigate the claims." *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 193 (S.D.N.Y. 2001), *aff'd*, 48 F. App'x 363 (2d Cir. 2002) (citation and internal quotation marks omitted); *see also Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (noting the "purpose" of the notice of

claim statute is to provide the County with "an adequate opportunity to investigate the claim[s] in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation") (citation and internal quotation marks omitted). However, "[a] plaintiff may not later add a new theory of liability that was not included in the notice of claim[.]" *Rubenstein v. City of N.Y.*, 111 N.Y.S.3d 43, 45 (N.Y. App. Div. 2019). "Any theory of liability omitted from the notice of claim may not be included in a subsequent lawsuit." *McNaughton v. Cnty. of Chautauqua*, 2017 WL 4518173, at *3 (W.D.N.Y. Oct. 10, 2017) (quoting *Jewell v. City of N.Y.*, 1995 WL 86432, at *1 (S.D.N.Y. Mar. 1, 1995)).

Defendants argue that the substance of Plaintiffs' amended cause of action for wrongful termination is based on N.Y. Civ. Serv. L. § 75, which was not identified in Plaintiff J. Nolan's September 20, 2018 Original Notice of Claim or Plaintiffs' April 18, 2019 Amended Notice of Claim. The Original Notice of Claim asserts that Plaintiff J. Nolan was wrongfully terminated and that on June 26, 2018, Sheriff Howard published a defamatory statement that Plaintiff J. Nolan was guilty of stealing another officer's magazine for a duty gun. The Amended Notice of Claim discloses the magazine pouch incident from May 27, 2018; asserts that on June 8, 2018, Plaintiff J. Nolan was told to either resign or be arrested; states that Plaintiff J. Nolan received a letter that day placing him on administrative leave and ordering him to home confinement; and claims that on June 22, 2018, his employment was "wrongfully terminated" as a result of an improper and negligent investigation by the Sheriff's Department, Undersheriff Wipperman, Defendant Diina, and Defendant Hartman. (Doc. 2 at 3, ¶ 10.)

In his original Complaint, Plaintiff J. Nolan alleged he was wrongfully terminated due to a negligent investigation as set forth in the Amended Notice of Claim. In the PAC, he alleges that he was wrongfully terminated because he did not receive a hearing prior to his termination as required under N.Y. Civ. Serv. L. § 75. In his opposition to the Defendants' motion to dismiss, Plaintiff J. Nolan contends that he was only required to reference the time, place, and manner in which the wrongful termination arose in his Notice of Claim and that he did not specifically have to address § 75.

The Original and Amended Notices of Claim do not include an assertion that Plaintiff J. Nolan is the type of civil service employee entitled to the protections of N.Y. Civ. Serv. L. § 75 or that he was deprived of a § 75 hearing prior to his termination. Although the Notices of Claim put the Defendants on notice of Plaintiff J. Nolan's wrongful termination claim based on Defendants' alleged negligent investigation, they provide no notice of Defendants' alleged failure to comply with N.Y. Civ. Serv. L. § 75. Against this backdrop, Plaintiff J. Nolan's wrongful termination claim based on § 75 "must be dismissed[.]" *Monmasterio v. N.Y.C. Hous. Auth.*, 833 N.Y.S.2d 498, 499 (N.Y. App. Div. 2007) (dismissing negligence claim premised on inadequate security where notice of claim satisfied N.Y. Gen. Mun. L. § 50-e as to inadequate lighting theory but not inadequate security, "a new, distinct theory of liability[,]" because "nothing in the notice of claim would have alerted defendant to the need to investigate the number and adequacy of the security personnel it employed"); *see also McNaughton*, 2017 WL 4518173, at *3 (dismissing medical malpractice claims based on failure to diagnose when notice of claim only alleged defendants failed to maintain medications and equipment).

For the reasons stated above, the court DENIES Plaintiffs' proposed amendments to Plaintiff J. Nolan's wrongful termination claim based on § 75 as futile and GRANTS Defendants' motion to dismiss this claim (Count I).

### D. Whether the Court Should Dismiss Plaintiff J. Nolan's Defamation *Per Se* Claim Against the County (Count II).

The County seeks dismissal of Plaintiff J. Nolan's defamation *per se* claim because he fails to allege facts indicating that the County participated in the alleged defamatory conduct. Plaintiff counters that the County may be held vicariously liable for Sheriff Howard's defamatory statement because those statements were made while Sheriff Howard was performing his official duties.

New York's Constitution "allows a county to accept responsibility for the negligent acts of the Sheriff[.]" *Marashian v. City of Utica*, 626 N.Y.S.2d 646, 647 (N.Y. App. Div. 1995). It does not, however, "impose liability upon the county for the acts of the Sheriff or his deputies on a theory of respondeat superior[.]" *Id.* For this reason, a

county "may not be held responsible for the negligent acts of the Sheriff and his deputies on the theory of respondeat superior, in the absence of a local law assuming such responsibility[.]" *Villar v. Cnty. of Erie*, 5 N.Y.S.3d 747, 748 (N.Y. App. Div. 2015) (internal quotation marks omitted) (quoting *Marashian*, 626 N.Y.S.2d at 647); *accord Mosey v. Cnty. of Erie*, 984 N.Y.S.2d 706, 709 (N.Y. App. Div. 2014). Plaintiffs cite no local law that plausibly supports a conclusion that the County has "assum[ed] such responsibility." *Id.*

Under New York law, counties are generally not liable for tortious acts other than negligence committed by a Sheriff or his or her deputies without a legislative assumption of liability. *See, e.g.*, *Wierzbic v. Cnty. of Erie*, 2018 WL 550521, at *10 (W.D.N.Y. Jan. 25, 2018) (dismissing tort claims against the County premised on *respondeat superior* liability for Sheriff's deputies); *Miller v. Cnty. of Monroe*, 2013 WL 2180738, at *5 (W.D.N.Y. May 17, 2013) (dismissing tort claims because "the County does not have *respondeat superior* liability for the conduct of the [Sheriff's] Deputies"). Because Plaintiffs do not plausibly allege that the County has adopted a local law assuming *respondeat superior* liability for the Sheriff's conduct, the court DENIES the proposed amendments as futile and DISMISSES Plaintiff J. Nolan's defamation claim against the County.

### E. Whether Plaintiff J. Nolan's Defamation *Per Se* Claim Against Sheriff Howard is Barred by the Statute of Limitations (Count II).

Sheriff Howard renews his motion to dismiss Plaintiff J. Nolan's defamation claim as time-barred under the statute of limitations because Plaintiff J. Nolan fails to allege that Sheriff Howard was acting in his official capacity when he made the alleged defamatory statement. As Sheriff Howard notes, the court has previously addressed this issue in its April 24, 2020 Opinion and Order:

> The statute of limitations turns on whether Sheriff Howard was acting within the scope of his employment and the County has a duty to indemnify him. Because there are conflicting assertions regarding Sheriff Howard's activities and "the work duties associated therewith, or the manner in which the alleged conduct fell within the scope of [his] employment[,] . . . resolution of the [statute of limitations] issue must await discovery and

> further motion practice or trial[.]" *Int'l Shared Servs., Inc. [v. Cnty. of Nassau]*, 634 N.Y.S.2d [722,] 724 [(N.Y. App. Div. 1995)]; *see also Frey v. Bekins Van Lines, Inc.*, 748 F. Supp. 2d 176, 182 (E.D.N.Y. 2010) (denying a motion to dismiss on statute of limitations grounds because "[t]he court . . . must await the development of facts before it can properly categorize the claims, when they arose, and which statute of limitation applies").

(Doc. 8 at 17.)

In the PAC, Plaintiff J. Nolan asserts the same inconsistent allegations made in his original Complaint that Sheriff Howard acted "in the course of [his] employment with Defendant County of Erie" and "maliciously, intentionally, wantonly, and/or negligently[,] and . . . outside the scope of [his] respective employment[] with Defendant County of Erie[.]" (Doc. 9 at 3-4, ¶¶ 16-17.) If Sheriff Howard was acting in his official capacity and within the scope of his employment, the County may be required to indemnify him, triggering the application of the one-year-and-ninety-day limitations period set forth in N.Y. Gen. Mun. § 50-I. In that event, Plaintiff J. Nolan's defamation *per se* claim against Sheriff Howard would be timely. *See Ruggiero v. Phillips*, 739 N.Y.S.2d 797, 799-800 (N.Y. App. Div. 2002) (holding defendant village must indemnify officer if he "was acting in the performance of his duties and within the scope of his employment when he committed the alleged tort," rendering village "the real party in interest" and triggering application of N.Y. Gen. Mun. L. § 50-i limitations period to libel claim against officer).

Because Plaintiff J. Nolan was advised of the inconsistency in his original Complaint and failed to address it, the court ORDERS a more definite statement pursuant to Fed. R. Civ. P. 12(e) within fourteen (14) days of the Opinion and Order. If an adequate more definite statement is not forthcoming, the court will grant Sheriff Howard's motion to dismiss.

### F. Whether to Dismiss Plaintiff J. Nolan's Defamation *Per Se* Claim Against Undersheriff Wipperman and Defendants Diina and Hartman (Count II).

Undersheriff Wipperman and Defendants Diina and Hartman seek dismissal of Plaintiff J. Nolan's defamation claim because the PAC does not assert facts supporting

their individual involvement in the alleged defamation. To the extent Plaintiffs intended to assert a defamation claim against these individual Defendants, the court GRANTS their motion to dismiss because the PAC does not plausibly allege that they engaged in defamation. *See Twombly*, 550 U.S. at 557 (holding claims must amount to more than "naked assertion[s]" devoid of "factual enhancement"). Plaintiff J. Nolan's defamation *per se* claim (Count II) as to all Defendants except Sheriff Howard is therefore DISMISSED.

### G. Whether the Court Should Dismiss Plaintiff J. Nolan's Retaliation Claim (Count III).

Defendants argue that Plaintiff J. Nolan's cause of action sounding in "employer retaliation against employee" (Doc. 9 at 11) is subject to dismissal because: (1) it is barred by the statute of limitations; (2) it is not contained within the Original or Amended Notices of Claim; and (3) Plaintiff J. Nolan fails to plausibly state a claim for relief.

Defendants assert that Plaintiff J. Nolan's retaliation claim is barred by the statute of limitations because a one-year limitations period applies and his termination occurred more than one year before commencement of this action. Plaintiff J. Nolan does not dispute that a one-year statute of limitations applies to his retaliation claim but instead alleges in his PAC that retaliation occurred through May 30, 2019, less than one year before he filed his original Complaint on September 9, 2019. Because he plausibly pleads retaliation within one year of the commencement of this action, Plaintiff J. Nolan's retaliation claim is not dismissed on statute of limitations grounds.

Plaintiff J. Nolan did not raise retaliation as a theory of liability in his Original or Amended Notice of Claim. Neither the Original nor the Amended Notice of Claim assert that Plaintiff J. Nolan was a "whistleblower" or list the alleged retaliatory acts of harassment asserted in the PAC.

Plaintiff J. Nolan argues that the court should construe his pleadings and Amended Notice of Claim "liberally to prevent errors in draftsmanship from barring justice to litigants." (Doc. 11-1 at 11.) For this proposition, he cites the "no set of facts" pleading standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45 (1957), which was overruled by

*Twombly*, 550 U.S. at 561-63 and *Iqbal*, 556 U.S. at 670. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) ("In *Iqbal* and *Twombly*, . . . the Court abandoned *Conley's* 'no set of facts' test and adopted instead a plausibility standard of pleading.").[6]

Under New York law, the court "must construe the notice-of-claim requirements strictly, and a '[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.'" *Simon v. City of N.Y.*, 2011 WL 317975, at *15 (E.D.N.Y. Jan. 3, 2011) (alteration in original) (quoting *Hardy*, 164 F.3d at 793-94). Serving a notice of claim is a "condition precedent to asserting a tort claim against a municipality." *Rubenstein*, 111 N.Y.S.3d at 45 (citation and internal quotation marks omitted) (quoting *Steins v. Inc. Vill. of Garden City*, 7 N.Y.S.3d 419, 421 (N.Y. App. Div. 2015)). Because Plaintiff J. Nolan's retaliation claim rests on a theory of liability and facts that were not set forth in his Notices of Claim, Defendants did not have "an adequate opportunity to investigate the claim[s] in a timely and efficient manner[.]"*Hardy*, 164 F.3d at 794 (citation and internal quotation marks omitted); *see also Rubenstein*, 111 N.Y.S.3d at 45 (holding a notice of claim "must at least adequately apprise the defendant that the claimant would seek to impose liability under a cognizable theory of recovery" and dismissing negligence cause of action where notice of claim did not assert theory of liability alleged in complaint) (citation and internal quotation marks omitted).

With regard to whether Plaintiff J. Nolan plausibly stated a claim for relief, Defendants assert that he did not comply with New York Labor Law § 740(3) which requires that an employee seeking to assert a retaliation claim bring the retaliatory "activity, policy or practice in violation of law, rule or regulation to the attention of a supervisor of the employer" in order to "afford[] such employer a reasonable opportunity to correct such activity, policy or practice." *Id.* A plaintiff is not protected under § 740 unless he or she complies with the requirement in § 740(3). *Frederick v. State*, 232 F.

---

[6] The court has previously brought this issue to Plaintiffs' attention. *See* Doc. at 19 n.6.

Supp. 3d 326, 334 (W.D.N.Y. 2017) (dismissing a § 740 cause of action because the plaintiff failed to plead that he brought "the complained-of activity to the attention of a supervisor of his employer").

In the PAC, Plaintiff J. Nolan alleges that he reported one incident, in which Deputy Scarpace verbally assaulted him in front of other people, by submitting a complaint against Deputy Scarpace and asserts that the Defendants refused to process his complaint or act on it. Plaintiff does not allege that he alerted a "supervisor of [his] employer" of any other alleged retaliatory incident. N.Y. Lab. L. § 740(3). As a result, Plaintiff J. Nolan has failed to plausibly allege a retaliation claim under § 740.

For the foregoing reasons, the court DENIES Plaintiff leave to amend to assert a retaliation/harassment claim as set forth in Count III of the PAC on the grounds of futility.

### H. Whether the Court Should Dismiss Plaintiff J. Nolan's Fourteenth Amendment Due Process Claim (Count IV).

Defendants maintain Plaintiff J. Nolan fails to plausibly allege a 42 U.S.C. § 1983 claim for deprivation of his due process rights under the Fourteenth Amendment because he has not proposed amendments to his allegations regarding the County's customs, policies, and practices. Under *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978), a municipality may be liable under § 1983 for its employees' unconstitutional actions "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). To assert a *Monell* claim, a plaintiff must plead: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

In his original Complaint, Plaintiff J. Nolan alleged that the County "had a custom, policy and practice of retaliating against officers who sought legal redress against the Defendants herein" and that his harassment, termination of employment, and arrest occurred "pursuant to a policy and custom of Defendants County of Erie and Erie County

Sheriff's Department." (Doc. 1 at 19, ¶¶ 84-86.) The court dismissed those allegations as conclusory. *See* Doc. 8 at 20; *see also Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("'[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference[.]'") (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (overruled on other grounds by *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993)). Plaintiffs have not rectified that error in the PAC.

In the absence of proposed amendments that plausibly state a *Monell* claim in a non-conclusory manner, the court must DENY Plaintiff J. Nolan's proposed amendments to his Fourteenth Amendment Due Process claim pursuant to 42 U.S.C. § 1983 (Count IV) as futile. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) ("'[T]he doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (second alteration in original) (quoting *Ariz. v. Cal.*, 460 U.S. 605, 618 (1983)).

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' proposed amendments as set forth in the PAC as futile and GRANTS IN PART Defendants' motion to dismiss Counts I, II, III, and IV. (Doc. 10.) Counts I, III, and IV are dismissed against all Defendants. With regard to Count II against Sheriff Howard, the court ORDERS Plaintiffs to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e) within fourteen (14) days of the Opinion and Order and if an adequate more definite statement is not forthcoming, the court will grant Sheriff Howard's motion to dismiss Plaintiff's

defamation *per se* claim. The court DENIES Plaintiffs' motion for sanctions. (Doc. 11.)

SO ORDERED.

Dated this 16th day of December, 2020.

Christina Reiss, District Judge
United States District Court